# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4546 | **DATE** | AUG. 11 , 2004 |
| **CASE TITLE** | UWAKWE AKPULONU v. NATE McGOWAN, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Motions [32-1, 33-1, 34-1, 40-1, 42-1, 51-1, 58-2, 63-1, 66-1] are granted in part and denied in part. Motion [35-1,2] is denied. Motions [58-1, 63-1] are denied without prejudice as moot. Counts II, III (in part), IV-VII, VIII-IX (in part), XII, XIII, XIV (in part), XV-XVII, XVIII-XX (without prejudice), XXIII, and XXIV of the Amended Complaint are dismissed. The official capacity claims are dismissed without prejudice. A rule to show cause shall issue. By August 30, 2004, plaintiff shall file a brief, not in excess of 15 pages, showing cause why this case should not be dismissed in accordance with 28 U.S.C. § 1915(e)(2)(A). By September 14, 2004, defendants may file responses to plaintiff's show cause brief. Ruling on the § 1915(e)(2)(A) issue will be by mail.

(11) ■ [For further detail, see attached Memorandum Opinion and Order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices: 2

AUG 12 2004
date docketed

docketing deputy initials

AUG. 11, 2004
date mailed notice

Document Number

70

cw

courtroom deputy's initials

U.S. DISTRICT COURT
CLERK

2004 AUG 11 PM 5:16

Date/time received in central Clerk's Office

mqm
mailing initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


UWAKWE AKPULONU,              )
                             )
            Plaintiff,       )
                             )
      v.                     )        No. 03 C 4546
                             )
NATE McGOWAN, et al.,        )
                             )
            Defendants.      )


**MEMORANDUM OPINION AND ORDER**

DOCKETED

AUG 1 2 2004

<u>Pro se</u> plaintiff Uwakwe Akpulonu is Black. He was born

in Nigeria and now lives in Illinois. Plaintiff alleges that he

is a Nigerian citizen, but also that he has resided in the United

States for more than 30 years, which indicates that he is a

permanent resident. On June 12, 2003, plaintiff filed a lawsuit

in the Circuit Court of Cook County, Illinois, naming as

defendants the City of Chicago and Nate McGowan, a Streets and

Sanitation Department Superintendent for the 20th Ward. After

being served with a summons, on June 30, 2003, the City removed

the case to federal court based on the inclusion of federal

claims.[1]

---

[1]In the Amended Complaint, plaintiff also cites to the
diversity statute, 28 U.S.C. § 1332. Plaintiff alleges that all
the defendants are citizens and residents of Illinois. Although
plaintiff is a citizen of Nigeria, he apparently is a United
States permanent resident domiciled in Illinois. Therefore, he
is deemed a citizen of Illinois for diversity purposes. <u>See</u> 28
U.S.C. § 1332(a) (last sentence). Since plaintiff and some or
all of the defendants are citizens of Illinois, there is no

On November 5, 2003, plaintiff filed his Amended Complaint. He again named the City and McGowan as defendants, as well as additional defendants. All the individual defendants are employees of the City and are named in their individual and official capacities. Also named as defendants in the Amended Complaint are Mayor Richard M. Daley; Alderman Arenda Troutman of the 20th Ward; Chester Mack of the Planning and Development Department; and Police Officers Vanessa Muhummad and Carl Cuevas. Plaintiff also named John T., an employee of the Bureau of Traffic or Department of Streets and Sanitation, but he has not yet been identified and served. Plaintiff also has not yet identified or served John Doe members of the Internal Affairs division of the Police Department. Although not included in the caption of the complaint, in the body of the complaint plaintiff refers to E & T Towing Company and four of its drivers as defendants, but they have not been served. They will not be considered as defendants. Plaintiff's claims generally revolve around defendants allegedly improperly removing personal property

---

jurisdiction under the diversity statute. Although defendants contend the case should be dismissed if all the federal claims are dismissed, see 28 U.S.C. § 1367(c)(3), that would not be the applicable procedure. Since this case was removed from state court, if all the federal claims supporting jurisdiction are dismissed and jurisdiction over the remaining state law claims is not retained, the appropriate procedure would be to remand the remaining state law claims to the Circuit Court of Cook County. See 28 U.S.C. § 1441(c); Key Outdoor Inc. v. City of Galesburg, Ill., 327 F.3d 549, 550 (7th Cir. 2003).

from real property owned by plaintiff and located at 5941-59 South State Street in Chicago's 20th Ward. All the defendants who have been fully named and served have moved to dismiss the Amended Complaint.[2] To the extent an argument made by one defendant applies equally to another defendant, the argument will be considered as to all defendants for whom it may be applicable.

## I. MOTION TO DISMISS STANDARD

On defendants' Rule 12(b)(6) motions to dismiss, plaintiff's well-pleaded allegations of fact are to be taken as true and all reasonable inferences are drawn in plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir. 1992). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002); Doherty v. City of Chicago,

---

[2]Plaintiff complains that he did not receive proper notice of all motions. Regardless of whether plaintiff failed to receive some notices and regardless of whose fault that might have been, plaintiff received numerous extensions of time before he responded to the motions to dismiss and received copies of all motions well before his answer brief was filed. No motion to dismiss will be denied based on deficient notice or some other purported abuse of procedures.

75 F.3d 318, 322 (7th Cir. 1996). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). It is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992).

Because plaintiff is proceeding pro se, his complaint must be construed liberally with plaintiff being held to less stringent standards than those applied to complaints drafted by attorneys. Henderson v. Sheahan, 196 F.3d 839, 845-46 (7th Cir. 1999), cert. denied, 530 U.S. 1244 (2000); Swofford, 969 F.2d at 549. Additionally, consideration is not limited to the complaint; allegations contained in other court filings, such as plaintiff's answer to the motion to dismiss and related motions, must be considered as well. Id. However, in response to a motion to dismiss that raises the issue, plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it. Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999). While a pro se plaintiff is given

more leeway as to raising arguments or citing all relevant precedents, his brief must be sufficient to discern a cogent argument and he must do more than just generally assert error without citation to any pertinent authority.[3]  See Anderson v. Hardiman, 241 F.3d 544, 545 (7th Cir. 2001); United States ex rel. Redmond v. Jungwirth, 2003 WL 21960352 *5 (N.D. Ill. Aug. 14, 2003); Rhodes v. Murray's Discount Auto Stores, 2003 WL 1127615 *5 (N.D. Ill. March 12, 2003).

It is also true that a plaintiff, including a pro se plaintiff, can plead himself out of court by alleging facts showing no viable claim.  Henderson, 196 F.3d at 846; Jackson, 66 F.3d at 153-54; Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994); Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992).  While compliance with a statute of limitations need not be pleaded in the complaint, the timeliness of a claim can be raised on a motion to dismiss if the plaintiff has pleaded

---

[3]Plaintiff's lengthy answer brief (83 pages), which he was granted leave to file, and the numerous motions he has filed are repetitive and many of the assertions contained therein are not responsive and pertinent to the motions to dismiss.  The pleadings are also difficult to understand because of improper grammar and failure to use proper punctuation.  The court has done its best to discern the essential assertions and arguments that plaintiff has made.  In any further pleading that he may file, plaintiff must attempt to do his best to be clear, on point, and succinct.  Plaintiff will not be permitted to file any further brief that exceeds the 15-page limit established by Local Rule 7.1.

facts showing that the claim is untimely.  See Tregenza, 12 F.3d

at 718; Early, 959 F.2d at 79; United States ex rel. Bidani v.

Lewis, 1999 WL 163053 *4 (N.D. Ill. March 12, 1999).

## II.  FACTUAL ALLEGATIONS

Liberally construing the Amended Complaint and

allegations made in response to the motions to dismiss, the facts

taken as true for purposes of ruling on the motions to dismiss

are as follows.  In 1996, plaintiff purchased three parcels of

property located at 5941-59 South State Street in Chicago.[4]  In

1996, plaintiff cleaned waste from the properties, fenced in the

properties, and installed two gates and a mailbox.  The

properties are alleged to be in a neighborhood that requires

security against burglars and thieves.  Besides the fences with

locked gates, plaintiff purchased dogs.  Plaintiff then began

parking construction equipment and other vehicles on the

property, as well as trailers in which he stored other personal

property that was intended for resale.  From 1996 through 2003,

plaintiff also lived on the property.  At the time the personal

---

[4]In his answer to the motions to dismiss, plaintiff also
refers to a number of other Chicago properties that he has owned
and which he claims Chicago officials ejected him from in the
1980's and early 1990's.  No claims regarding those properties
are mentioned in the complaint and it is assumed these facts are
alleged as background.  Claims regarding the State Street
properties and the allegedly related tickets, arrests, and
surveillance are all that will be considered.

property was removed in 2003, plaintiff alleges the personal property included tractors, a pay loader, tow trucks, pick-up trucks, vans, semi-tractors, automobiles, trailers, compressors, tools, welding machines, popcorn machines, heaters, concrete mix, spare parts, clothing, and other marketable goods and items. Plaintiff's allegations as to the worth of this property varies from $20,000,000 to $100,000,000.

In 1999, defendants Mayor Daley and Planning and Development employee Mack made plans for redevelopment that involved plaintiff's State Street properties. At some point thereafter, the City obtained tax deeds for the property, but those deeds were subsequently cancelled on May 22, 2002. Plaintiff does not allege when the tax deeds were first issued, but it was some date before March 2001.[5] Plaintiff does allege that tax deeds for two of the State Street parcels were obtained by the City when it failed to serve plaintiff with notice of the proceedings. Plaintiff alleges that, in March 2002 in the tax deed proceedings, he filed motions to dismiss raising federal grounds, but the City prevented the cases from being removed to

_____

[5]Although the Amended Complaint frequently cites to exhibits, those exhibits are not attached to the complaint. Plaintiff states in the Amended Complaint that he could not afford to again duplicate the exhibits and that they are contained in other pleadings already filed in the case. However, many of the cited exhibits could not be found in the court file for this case. Also, defendants do not provide court records for which judicial notice could be taken.

federal court. Plaintiff also complains that he filed motions to vacate the tax deeds and the City failed to respond to those motions. On the facts alleged, it must be accepted as true that plaintiff never actually lost control or ownership of the State Street properties. The tax deed cases were dismissed in their entirety on September 16, 2002.

Plaintiff alleges that, in December 1999 or January 2000, defendant Officer Cuevas drove upon the sidewalk and then stopped in plaintiff's driveway. Cuevas asked plaintiff when he was leaving the State Street properties. On March 20, 2000, plaintiff was walking on a sidewalk when Cuevas drove up in his police car and called plaintiff over to the car. Cuevas accused plaintiff of having a court case with a "Big Big" police officer. Cuevas then arrested plaintiff and took him to the police station to issue him one parking ticket for parking in front of a fire hydrant and five tickets for moving violations. Plaintiff points out that the moving violations are inconsistent with the parking violation and alleges Cuevas falsified the tickets and related police report. Plaintiff complained to the Police Department's Internal Affairs Division. On March 6, 2002, a court dismissed all six tickets.

Plaintiff also alleges a January 2001 incident in which Cuevas issued three moving violations to James Moore even though

Moore's car was not moving.  This occurred eight days after Moore
failed to agree with Cuevas that plaintiff was a squatter.

On a daily basis during March 2002, Cuevas parked in an
alley behind plaintiff's properties and conducted "illegal
surveillance" of plaintiff.

On June 21, 2002, Mack posted eviction notices on
plaintiff's properties based on tax deeds purportedly recorded in
March 2001.  However, the tax deeds had already been vacated in
May 2002.  It is alleged that Mack had actual knowledge the deeds
had been vacated.  It is generally alleged that all the City
defendants had knowledge the tax deeds had been vacated.

On June 2, 2003, John T. (unserved defendant) told
plaintiff the City was evicting him based on the tax deeds and
that defendant Alderman Troutman wanted the properties back
immediately.  Although it was requested that plaintiff meet with
Troutman, he declined to do so.

On June 5, 2003, defendant McGowan, 20th Ward Streets and
Sanitation Superintendent, arrived at the State Street properties
and cut the chains and locks off the gates.  He then announced to
the crowd that had gathered that the City owned the properties
under tax deeds, that plaintiff was illegally squatting at the
properties, and that Mack, Troutman, and the City wanted the
properties back.  McGowan advised plaintiff that plaintiff did
not own the properties and had only been staying because of

McGowan's good graces. McGowan stated that he would get a court order to evict plaintiff. Plaintiff reminded McGowan, as he already knew, that plaintiff owned the property and advised McGowan that he could confirm this with a City attorney. Plaintiff thereafter spoke to two attorneys in the City's Corporation Counsel office who confirmed he owned the property and said they would advise McGowan, Troutman, and Mack of that fact. McGowan is alleged to have acted at the direction of Daley, Troutman, and Mack.

After purchasing new locks and chains, plaintiff returned to his property and discovered that one of his trailers had been looted and he had lost $110,000.00 worth of property.

On June 11, 2003, John T. was at plaintiff's State Street properties supervising employees of E. & T. Towing, an agent of the City. They were removing all of plaintiff's personal property from the site. Plaintiff spoke to John T. who claimed the City owned the real property and that he was repossessing it pursuant to a court order, though he did not actually have such an order. Plaintiff showed John T. court orders vacating the previously issued tax deeds, but he refused to acknowledge them. John T. and the people he was supervising also stopped plaintiff from removing any of the personal property himself.

After repeated requests from plaintiff, John T. called the Chicago Police and defendant Officer Muhummad came to the

property. Plaintiff showed Muhummad the order vacating the tax deeds and John T. insisted that the City owned the property, but could not produce a court order for the eviction that John T. claimed he had. Muhummad called in a supervisor, but they eventually decided they could not determine the validity of any court order and told plaintiff he would have to instead pursue a civil case.

Over a period of three days, all of plaintiff's personal property was removed from the State Street properties. John T. and E & T Towing performed the removal work. McGowan either was directly involved in the removal or was personally involved by instructing John T. or others. It is also alleged that Daley, Troutman, and Mack were personally involved in directing that the removal be done and that they had full knowledge of what occurred.

Immediately after the personal property was taken, plaintiff began inquiring as to what happened to it. Troutman falsely told plaintiff she had no idea and had no involvement in the June 11 events. On June 20, a City Inspector from Troutman's office told plaintiff he should report the property as stolen. Plaintiff claims that defendants and other City employees took some of the personal property for their own personal gain, some items were crushed on site in June 2003, and, in November 2003, the remaining property was destroyed.

In one of his motions to amend the complaint (Docket Entry [58]), plaintiff also alleges that McGowan and others in the Streets and Sanitation Department improperly towed away his 1981 Chevy pickup truck on March 9, 2004 and initially failed to enter this fact in the City's tracking system. Plaintiff repeatedly attempted to obtain the return of the truck. After plaintiff wrote a letter to defendant Daley, Daley ordered that the truck be returned and it was returned on March 26, 2004. A potential claim based on this seizure would be against McGowan and the City. Plaintiff's allegations include that this incident was motivated by invidious discrimination. It is also alleged in this motion that plaintiff has a claim against the City for improperly seizing the same truck from November 4 through 13, 2003. It is also stated in this motion that plaintiff desires to amend the complaint to raise his claim for damages to five billion dollars.

Plaintiff alleges that all the named defendants acted intentionally and that they also acted with a discriminatory animus because of his race and his Nigerian nationality. Plaintiff also alleges that all the actions were pursuant to an official policy or custom of the City. In plaintiff's various conspiracy allegations, it is alleged that McGowan, Mack, Cuevas, Troutman, Daley, John T., and the City were members of a conspiracy or conspiracies involving the seizure of his personal

- 12 -

property on June 11, 2004, the destruction of that property, the attempt to evict plaintiff from the real properties, and the related court proceedings.  Muhummad is not alleged to be a member of any conspiracy.

The Amended Complaint is broken down into 23 counts, denominated as follows:  (I) A false arrest claim against Cuevas for arresting plaintiff in March 2000 and falsely issuing the six tickets.  (II) A Fourteenth Amendment claim against Cuevas that is labeled as "aggravated hate and malice," but which relies on the factual allegations that Cuevas issued tickets that lacked a factual basis and also falsified the supporting police reports. (III) A constitutional claim that Cuevas's March 2000 actions were motivated by race and nationality discrimination and that he conspired with other police officers to retaliate against plaintiff.  (IV) A state law "fraud and perjury" claim against Cuevas based on issuing falsified tickets.  (V) A state law claim against Cuevas that is labeled as "contributory negligence," but in which plaintiff is alleging that false statements in the tickets, which plaintiff refers to as defamation, caused plaintiff to lose a job and be turned down for a California driver's license.  (VI) A Fourth Amendment claim against Cuevas for the "unconstitutional surveillance" that began in March 2002. (VII) A state law defamation claim against Cuevas for telling Moore in January 2001 that plaintiff was a "squatter" on the

State Street properties. (VIII) This count is denominated simply
"42 U.S.C. § 1983" and is against the City. In this count
plaintiff alleges that the City encouraged all the actions of
Cuevas claimed in Counts I through VII, by failing to adequately
take action following plaintiff's complaint to the Internal
Affairs Division. (IX) This is a claim against the City that it
is liable for Cuevas's unconstitutional conduct and was aware
that it occurred. (X) This is a claim against defendants,
including the City, for a conspiracy to deprive rights in
violation of 18 U.S.C. § 241 and deprivation of rights under
color of law in violation of 18 U.S.C. § 242 regarding the
seizure of plaintiff's property. (XI) Plaintiff claims the City
discriminated against him and conspired by failing to remove the
tax deed case to federal court. (XII) This is a claim that the
City conspired with the judge who presided over the tax deed
case. (XIII) This is a claim, labeled as "conspiracy & deceit"
and complaining that "defendant" (apparently the City) failed to
file an answer or motion in a state court case filed by
plaintiff. (XIV) This count reincorporates all other allegations
against the City, expressly refers to the City's acts being
deliberately indifferent, and also refers to there having been an
abuse of judicial rules regarding the assignment of plaintiff's
case. (XV) This is a claim against the City for "conspiracy"
based on not being granted a substitution of judge in a state

court case.  (XVI) This is a state law claim for defamation
against Mack for posting eviction notices on June 21, 2002 which
falsely indicated the City had tax deeds for the State Street
properties.  (XVII) This is a claim that Mack conspired with the
City and other defendants in posting the eviction notice and
taking improper actions in state court.  (XVIII-XX) These counts
are against John T., who has not been identified or served.
These counts will be dismissed without prejudice.  (XXI) This is
a Fourteenth Amendment "aggravated hatred and malice" claim
against McGowan based on cutting the chains and locks on June 5,
2003.  (XXII) This is a state law defamation claim against
McGowan based on his June 5, 2003 statement to the crowd that
plaintiff was a squatter.  (XXIII) This is labeled as a
"contributory negligence" claim against McGowan based on cutting
the chains and permitting others to remove $110,000 of
plaintiff's property.  (XXIV) This is a conspiracy claim against
Troutman in which John T., McGowan, and Mack are specifically
identified as coconspirators.


### III.  FEDERAL CLAIMS

The federal claims will be considered first.  Although
plaintiff has denominated 23 counts for his Amended Complaint,
legal characterizations of a claim that are contained in a
complaint are not binding and limiting.  Forseth, 199 F.3d

- 15 -

at 368; <u>Bartholet</u>, 953 F.2d at 1078.  If the facts alleged
support relief, other legal bases for the claims may be
substituted.  <u>Id.</u>  Such flexibility is especially appropriate in
a case such as the present one in which the plaintiff is
proceeding <u>pro se</u>.  Thus, although the counts that plaintiff has
set forth will be considered, for purposes of ruling on the
motions to dismiss, analysis will not be limited to the
particular characterizations or division of claims denominated in
the Amended Complaint.  The heart of plaintiff's Amended
Complaint is the allegation that defendants acted in concert
(conspired) to seize his personal property and attempt to obtain
his real property.  First, it will be considered whether the
allegations concerning that central claim state a basis for
relief against any defendant on various legal theories.
Thereafter, particular claims and allegations regarding specific
defendants will be considered.  For purposes of ruling on the
motions to dismiss, it must be assumed that plaintiff's
allegations are true.

### A.   June 11, 2003 Seizure and Subsequent Destruction of Plaintiff's Personal Property

Plaintiff alleges that Daley, Troutman, and Mack agreed
to conspire together to obtain the State Street properties in
order to use them for development.  It is also alleged that
Cuevas, McGowan, and John T. joined in the conspiracy.  The City

is claimed to be a member of the conspiracy as well. E & T
Towing is alleged to have performed under the direction of the
conspirators, but is not alleged to have been a member of the
conspiracy. The allegations do not indicate that Muhummad joined
in the conspiracy. In order to achieve the goal of the
conspiracy, defendants initially harassed plaintiff by issuing
unfounded tickets and arresting him on unfounded charges.
Defendants then used allegedly improper court procedures so that
the City obtained tax deeds for two of the State Street parcels.
Plaintiff, however, was able to vacate the tax deeds.
Nevertheless, defendants continued to harass plaintiff and
contend that he did not own the property. This eventually
reached the point of having McGowan cut the locks off plaintiff's
protective gates, which resulted in some looting of plaintiff's
personal property. Finally, defendants attempted to evict
plaintiff by unlawfully seizing all the personal property that
was stored on the State Street properties, converting some to
personal use and destroying the remainder. It is this last
action that is plaintiff's central complaint.

Defendants contend plaintiff has not adequately alleged a
conspiracy. Defendants contend that a higher level of pleading
applies to conspiracy allegations. However, absent the
conspiracy allegation being adequately intertwined with another
allegation requiring particularized pleading (e.g. fraud), the

particularity requirement of Fed. R. Civ. P. 9(b) does not apply to conspiracy allegations.  Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 783 (7th Cir. 1999); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990); Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc., 305 F. Supp. 2d 846, 853-54 (N.D. Ill. 2004). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purposes, and approximate date, so that the defendant has notice of what he is charged with."  Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (quoting Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002)).  Accord Guaranty Residential, 305 F. Supp. 2d at 863.  Although the complaint is not artfully drafted, plaintiff has alleged that all defendants, except Muhummad, joined in the conspiracy.  He has identified the purpose of the conspiracy, acts pursuant to the conspiracy, and that the parties acted in concert.  Plaintiff has alleged a conspiracy.

Although a conspiracy is alleged, it is not one that can support relief under the civil rights statutes.  Under the intracorporate conspiracy doctrine, a conspiracy cannot exist between members of the same governmental entity nor between the entity and one of its employees.  Payton v. Rush-Presbyterian-St. Luke's Medical Center, 184 F.3d 623, 632-33 (7th Cir. 1999); Aida Food & Liquor, Inc. v. City of Chicago, 2004 WL 719663 *10 (N.D.

- 18 -

Ill. March 31, 2004); Frazier v. Harris, 266 F. Supp. 2d 853, 870-71 (C.D. Ill. June 10, 2003). There are two exceptions to the intracorporate conspiracy doctrine, neither of which are applicable here. One exception is where the corporation or governmental entity's employees are motivated solely by their own personal interests. Hartman v. Board of Trustees of Community College District No. 508, 4 F.3d 465, 470 (7th Cir. 1993); Payton, 184 F.3d at 633 n.9. That exception is not applicable to the present case. Although it is alleged that some defendants used the seized property for their own gain, that is not alleged to be the sole motivation. Instead, it is alleged that the goal of the conspiracy was to obtain the real property for development by the City, which is conduct in furtherance of the governmental entity's interests. The other exception to the doctrine is where there is a broad pattern of unconstitutional conduct that permeates the entity. Hartman, 4 F.3d at 470-71; Wright v. Illinois Department of Children & Family Services, 40 F.3d 1492, 1508 (7th Cir. 1994). That exception does not apply in the present case which involves allegations that some employees of a large municipality, which employs thousands, are attempting to obtain three parcels of land for the municipality.

Because the allegations of conspiracy do not overcome the intracorporate conspiracy doctrine, all the federal claims of conspiracy will be dismissed. Since a conspiracy is essential to

any claim under § 1985 or § 1986, all claims under those statutes will be dismissed. The § 1983 conspiracy allegations are dismissed, but other claims under § 1983 still must be considered. It need not be decided whether the intracorporate conspiracy doctrine applies to 18 U.S.C. § 241, since Count X will be dismissed in that there is no civil remedy under §§ 241 and 242. Sarelas v. Anagnost, 332 F.2d 111 (7th Cir. 1964); Moore v. Kamikawa, 940 F. Supp. 260, 265 (D. Haw. 1995), aff'd by unpublished order, 82 F.3d 423 (9th Cir. 1996). The intracorporate conspiracy doctrine also applies to preclude pursuit of any state law conspiracy claims. See Salaymeh v. InterQual, Inc., 155 Ill. App. 3d 1040, 508 N.E.2d 1155, 1158 (5th Dist. 1987); Hanania v. Loren-Maltese, 319 F. Supp. 2d 814, 836 (N.D. Ill. 2004); EEOC v. Outsourcing Solutions Inc., 2002 WL 31409584 *17 (N.D. Ill. Oct. 24, 2002).

The § 1983 claims based on personal participation in the June 11, 2003 seizure of the personal property still must be considered. Although Daley, Troutman, and Mack contend that plaintiff has not alleged their personal participation, plaintiff has alleged that they personally participated by directing the alleged misconduct. It is also alleged that they all had full knowledge of what occurred, that they all knew plaintiff (not the City) owned the State Street properties, and that they all acted with a discriminatory animus. Contrary to the contentions of

some defendants, it is sufficient to conclusorily allege that defendants directed the conduct, had a discriminatory animus, and had certain knowledge. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998); Triad Associates, Inc. v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993). Directing the unconstitutional conduct of underlings, condoning it, or knowingly permitting it to continue is personal participation that can support supervisory liability. Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001); Chavez v. Illinois States Police, 251 F.3d 612, 651 (7th Cir. 2001); Anderson v. Cornejo, 284 F. Supp. 2d 1008, 1029 (N.D. Ill. 2003). Plaintiff also alleges McGowan personally participated in the June 11, 2003 seizure.

Defendants contend that plaintiff's claim regarding the seizure of his property fails because it is a due process claim and plaintiff has an adequate postdeprivation remedy. If plaintiff's seizure claims were indeed limited to being simply due process claims and being against non-policymaking individuals, that would likely be true. See Gable v. City of Chicago, 296 F.3d 531, 539-41 (7th Cir. 2002). Plaintiff's claim, however, is not limited to being a due process claim. Plaintiff also alleges invidious racial discrimination and his claim is also properly characterized as a Fourth Amendment claim.

Also, it is alleged that the conduct was pursuant to official policy in that it was ordered by the Mayor of the City.[6]

The postdeprivation remedy due process rule that is stated in Parratt v. Taylor, 451 U.S. 527 (1981), Hudson v. Palmer, 468 U.S. 517 (1984), and their progeny is limited to situations where the due process violation is random and unauthorized, that is, committed by government employees and not pursuant to official policy or custom. It does not apply to situations where the conduct is directed by a policymaking official or is otherwise pursuant to official policy, custom, or practice. Zinermon v. Burch, 494 U.S. 113 (1990); Matthiessen v. Board of Education of North Chicago Community High School District 123, 857 F.2d 404, 407 n.3 (7th Cir. 1988). As defendants concede, Mayor Daley is a policymaking official of the City of Chicago. See 65 ILCS 5-1-1-2(2)(a); McGuire v. City of Chicago, 2001 WL 1164129 *9 (N.D. Ill. Sept. 28, 2001); Radic v. Chicago Transit Authority, 878 F. Supp. 1130, 1134 (N.D. Ill. 1995), aff'd, 73 F.3d 159 (7th Cir.), cert. denied, 517 U.S. 1247 (1996). Since plaintiff alleges that the conduct at issue

---

[6]Plaintiff makes allegations that Mack and others are policymakers. He also makes allegations regarding responsibility for underlings which could be construed as implying a respondeat superior theory. However, he also alleges that Daley was personally involved in directing the conduct of others and that he had knowledge of all pertinent events. On the motion to dismiss, the allegations more favorable to plaintiff are the ones that must be taken as true.

was directed by Mayor Daley, a constitutional due process claim is is stated even if plaintiff otherwise had an adequate post-deprivation remedy.

Also, plaintiff alleges that defendants' actions in seizing his property without any adequate legal basis whatsoever was motivated, at least in part, by plaintiff's race and national origin.  Therefore, plaintiff has stated a substantive due process claim that involves a violation of a substantive constitutional right.  The existence of an adequate postdeprivation remedy is not an adequate ground for dismissing such a claim.  Gable, 296 F.3d at 541; Wudtke v. Davel, 128 F.3d 1057, 1062-63 (7th Cir. 1997); Doherty v. City of Chicago, 75 F.3d 318, 325-26 (7th Cir. 1996).

The facts alleged regarding the seizure also state a Fourth Amendment claim.  The Supreme Court has held that municipal employees participating in the seizure of a person's property constitutes a seizure protected by the Fourth Amendment. Soldal v. Cook County, Ill., 506 U.S. 56, 61-70 (1992).  To the extent the seizure was unreasonable, the seizure violates the Fourth Amendment.  Here, the defendants knew plaintiff had the right to remain on his property and no legal basis existed for attempting to evict plaintiff from the property.  Therefore, defendants' seizure of plaintiff's personal property was unreasonable and in violation of the Fourth Amendment.  The

Parratt postdeprivation rule is limited to due process claims; it does not apply to Fourth Amendment claims. McCullah v. Gadert, 344 F.3d 655, 660 (7th Cir. 2003). Plaintiff adequately alleges a Fourth Amendment claim based on the seizure of his property.

The individual defendants also contend that they are entitled to qualified immunity. Having determined that certain claims are not otherwise subject to dismissal, the remaining qualified immunity question is whether the right on which the claim is based was clearly established as of the date of the alleged misconduct. McCann v. Mangialardi, 337 F.3d 782, 786 (7th Cir. 2003). As the case law previously cited shows, prior to June 2003, it was clearly established that the facts alleged support a procedural due process, substantive due process, equal protection, and Fourth Amendment claim against the individual defendants.

### B. Claims Based on Cuevas's Conduct

The federal claims based on Cuevas's conduct are essentially for false arrest, malicious prosecution, illegal surveillance, and discrimination based on plaintiff's race and national origin. The Amended Complaint implies, and plaintiff's answer brief makes clear, that it is alleged that Cuevas was acting at the direction of Daley and Mack. Although Mack would not be in a line of authority that makes him a superior to Cuevas, who is a police officer, it still must be taken as true

that Cuevas was being directed by Mack as well. Since they
directed him to act, it must be taken as true that Daley and Mack
personally participated in Cuevas's conduct and may be held
liable for their supervisory or supervisory-type role. Plaintiff
alleges that Daley and Mack had knowledge of the conduct of
Cuevas and acted with the same intent. To the extent any claims
against Cuevas survive the motion to dismiss, they will also
continue as against Daley and Mack.

Cuevas contends that all the federal claims against him,
except the surveillance claim, are untimely. The statute of
limitations applicable to plaintiff's § 1983 claims is two years.
Wiley v. City of Chicago, 361 F.3d 994, 996 (7th Cir. 2004). No
claim was brought against Cuevas, Daley, or Mack until November
2003.

A civil rights claim generally accrues at the time the
wrongful conduct occurs. However, under Heck v. Humphrey,
512 U.S. 477 (1994), and its progeny, where success on a
constitutional claim would be inconsistent with or undermine the
validity of a related criminal charge or conviction, the claim
does not ripen or accrue until after the criminal charges or
conviction have been dismissed or nullified. Wiley, 361 F.3d at
996. The issue of arrest without probable cause generally is
distinct from the issue of guilt for the crime. Snodderly v.
R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 897 (7th Cir.

2001). Therefore, success on a false arrest claim usually will not undermine the related criminal charges and a false arrest claim generally accrues at the time a person is arrested. See Wiley, 361 F.3d at 996-97. In Wiley, though, it was recognized that certain successful false arrest claims do undermine the validity of the related criminal charges. Wiley involved a false arrest claim in which it was alleged that the defendant police officers had falsified evidence by planting illegal drugs on Wiley. To the extent the only evidence of the crime available to the prosecution was the falsely planted evidence, success on the false arrest claim would undermine the related criminal prosecution. See id. at 997-98.

The present case is similar to Wiley. Plaintiff alleges that Cuevas falsely reported that plaintiff had committed moving violations even though the car was parked. Plaintiff apparently also alleges that the parking ticket for parking the car at a fire hydrant is also based on false information. There is nothing to indicate that there was any evidence supporting the parking and moving violations other than the report and tickets written by Cuevas and his possible testimony. Therefore, like in Wiley, success on the false arrest claim would undermine the validity of the prosecution of the tickets. Thus, plaintiff's false arrest claim did not accrue until a court dismissed the tickets in March 2002. Since the lawsuit was brought within two

years after that, the false arrest claim against Cuevas will not be dismissed as untimely.

The Count II aggravated hate and malice claim, to the extent it is distinct from the Count I false arrest claim, is essentially a malicious prosecution claim. Assuming such a claim exists, an essential element of that claim would be that plaintiff was not guilty of the crime for which he was prosecuted. Therefore, success on such a claim would undermine the prosecution for the tickets. See Heck, 512 U.S. at 484-86; Snodderly, 239 F.3d at 900. Thus, the Count II claim against Cuevas also did not accrue until the tickets were dismissed in 2002. Heck, supra. Therefore, that claim is not untimely. However, although plaintiff's federal malicious prosecution claim is timely, that claim fails on its merits because there is no federal constitutional claim against police officers for malicious prosecution. See Newsome v. McCabe, 256 F.3d 747, 750-53 (7th Cir. 2001); Wiley, 361 F.3d at 996; Gauger v. Hendle, 349 F.3d 354, 359 (7th Cir. 2003). Count II will be dismissed.

The Count III discrimination claim is based on the conduct that occurred in March 2000. To the extent plaintiff is simply alleging that he was taken into custody because of his race and nationality, that claim accrued in 2000 and is untimely. However, to the extent he alleges that, because of invidious discrimination, he was arrested based on falsified evidence,

success on that claim would undermine the prosecution for the tickets.  That aspect of Count III did not accrue until the tickets were dismissed in 2002.  Similarly, a claim that plaintiff was maliciously prosecuted because of invidious discrimination would not accrue until 2002.  But, like the Count II claim, there is no separate discriminatory malicious prosecution claim because it was the prosecutors, not Cuevas, that made the decision to prosecute the tickets.  Count III will be dismissed except to the extent it is based on Cuevas being motivated by plaintiff's race and nationality in deciding to arrest plaintiff based on false evidence.

The allegedly unconstitutional illegal surveillance on which Count VI is based occurred in March 2002, less than two years prior to Cuevas being joined in this suit.  Plaintiff alleges that Cuevas looked at his property from the alley.  There is no violation of the Fourth Amendment when a police officer, without a warrant or probable cause, visually observes property from a public location.  See Kyllo v. United States, 533 U.S. 27, 31-32 (2001).  The Count VI surveillance claim will be dismissed.

Cuevas also raises a qualified immunity argument, but may only be raising it as regards Count VI which is otherwise being dismissed.  Nevertheless, qualified immunity will be considered as to the claims that are not otherwise subject to dismissal.  It was clearly established prior to 2000 that a person may not be

arrested when there are absolutely no facts supporting that he possibly committed any crime--in this case being arrested for allegedly committing a moving violation even though plaintiff was not even driving a car at the time he allegedly committed the offense.  See Haywood v. City of Chicago, 2002 WL 31118325 *4 (N.D. Ill. Sept. 25, 2002).  It was also clearly established that it violates the Constitution to select a person for arrest because of racial or national origin discrimination.  See Whren v. United States, 517 U.S. 806 (1996); Chavez, 251 F.3d at 635.

The Count I false arrest claim and Count III discrimination claim (to the extent based on being arrested based on falsified information) remain pending as against Cuevas.  The related claims as against Daley and Mack also remain pending. All other federal claims against Cuevas will be dismissed, as well as any related claims against Daley and Mack.

### C. Claim Against Muhummad

Although no specific count is denominated as being against Muhummad, the allegations against Muhummad are that she was called to the scene when plaintiff's possessions were being removed from his property and she declined to stop John T. and the others who were removing the possessions.  There is no allegation that Muhummad was involved with the other defendants or that she had any knowledge of plaintiff's situation until

receiving the call that day. There is also no allegation that
Muhummad aided John T. in any way nor took any action to prevent
plaintiff from attempting to act on his own behalf to protect his
rights. Instead, plaintiff contends Muhummad should be held
liable for failing to stop the looting of his property because
John T. could not show Muhummad any court order under which he
purportedly had authority to remove plaintiff's possessions from
the property.

A municipality and its employees do not have a
constitutional duty to protect its residents from crime and
prevent any criminal acts from occurring. DeShaney v. Winnebago
County Department of Social Services, 489 U.S. 189, 195 (1989);
Estate of Allen v. City of Rockford, 349 F.3d 1015, 1019 (7th
Cir. 2003). However, a municipality and its employees may have a
duty to protect persons who are in custody or have some other
special relationship with the municipality. Allen, 349 F.3d at
1019-20. Here, plaintiff was not in custody at the time his
property was being looted. Therefore, there must have been a
special relationship in order for Muhummad to have had a duty to
prevent the crime. In this case, the Chicago Police were called
and Muhummad was the officer sent in response to the call and she
was a witness to the activities that plaintiff characterizes as
criminal looting. But even assuming there is a constitutional
duty to act to prevent a property crime that is occurring in

front of a responding officer, the allegations do not support that Muhummad knowingly ignored an ongoing crime. Plaintiff showed her a court order that, according to plaintiff, shows tax deeds in the City's favor had been vacated in 2002. Even accepting that the court order was clear on that point, that does not conclusively show the City did not obtain the right to the property between May 2002 and the June 2003 incident. Plaintiff's own allegations are that Muhummad initially stopped the removal of plaintiff's property and then spoke with both plaintiff and John T. Additionally, she consulted with a superior regarding who had the right to the property. Muhummad thereafter expressed the opinion that she could not determine who was in the right. The facts alleged are inconsistent with Muhummad knowingly ignoring plaintiff's property rights or otherwise acting with deliberate indifference to plaintiff's rights. Muhummad could not be certain that any crime was occurring that she might have a duty to prevent. Muhummad's failure to stop a purported crime does not, by itself, state a constitutional claim.

It is also true that a police officer has a duty to take reasonable action to prevent unconstitutional conduct by another officer that is occurring in the first officer's presence. See Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994); Cornejo, 284 F. Supp. 2d at 1030. Even assuming this duty extends to

preventing such misconduct by other municipal employees as well, the allegations do not support that Muhummad knew there was no basis for removing plaintiff's possessions from the property. Therefore, she would not have known that John T. was acting improperly and had no duty to stop him.

It is also generally alleged that Muhummad was motivated by invidious discrimination. See Am. Compl. ¶ 88 ("Police Officers" defendants). Even if the Constitution does not require that a person be provided police protection, it does prohibit denying police protection because of a person's race or national origin. Yick Wo v. Hopkins, 118 U.S. 356 (1886); Didzerekis v. Stewart, 41 F. Supp. 2d 840, 846-47 (N.D. Ill. 1999); DeShaney, 489 U.S. at 197 n.3 (dictum); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982) (dictum). If Muhummad would have acted to stop John T. from taking the personal property had plaintiff not been Black or from Nigeria, then plaintiff was denied equal protection of the law. The equal protection claim may proceed against Muhummad, but all other aspects of the claim against her will be dismissed. Muhummad is not entitled to qualified immunity on the equal protection claim. It has been clearly established for more than a century that municipal protective services cannot be denied on the basis of invidious discrimination. See Yick Wo, supra.

## D. Additional Claims Based on McGowan's Conduct

It is alleged that, on June 5, 2003, McGowan personally cut the chains and locks off the gates at plaintiff's State Street properties. As a result, burglars were able to take $110,000.00 of plaintiff's property. On the facts alleged, it must be taken as true that McGowan knew that plaintiff owned the State Street properties and that the City did not have any legal claim to the property, including no right to remove the locks from the gates. It must also be taken as true that McGowan acted at the direction of Daley, Mack, and Troutman. To the extent any claim against McGowan based on the June 5 conduct survives the motion to dismiss, the claim will also remain pending as against Daley, Mack, and Troutman.

As previously discussed regarding the claim against Muhummad, there is no constitutional right to have a municipality protect a resident from criminal conduct. See DeShaney, 489 U.S. at 195; Allen, 349 F.3d at 1019. One exception to this rule is that the municipality or one of its employees may be liable if it affirmatively places a person in a danger that he would not have been in absent the state action. See Allen, 349 F.3d at 1019, 1022; Monfils v. Taylor, 165 F.3d 511, 516 (7th Cir. 1998), cert. denied, 528 U.S. 810 (1999). This state-created danger exception, however, has not been applied outside the context of physical safety and danger. See Allen, 349 F.3d at 1019, 1022

(collecting cases); Monfils, 165 F.3d at 516 (same).  See also
DeShaney, 489 U.S. at 201.  Cf. Harajli v. Huron Township, 365
F.3d 501, 507 (6th Cir. 2004) (assuming for the sake of argument
that the exception applies to deprivations of property).  McGowan
cannot be held liable simply for placing plaintiff in a situation
where others would have an easier opportunity to steal
plaintiff's property.  Alternatively, even if a police officer
can be held liable for placing a person in such a situation,
McGowan would be entitled to qualified immunity because, as of
June 2003, it was not clearly established that such a rule
applied to placing a person at risk of being subject to a
property crime.

It is also possible that McGowan could be held liable for
intentionally damaging and taking plaintiff's locks and chains.
The locks and chains are themselves items of property.  As was
previously discussed regarding the June 11, 2003 events, such a
claim survives regardless of the existence of any postdeprivation
remedy because the conduct is alleged to have been directed by a
policymaking official (Mayor Daley), is alleged to have been
motivated by invidious discrimination, and may also be brought as
a Fourth Amendment claim.  Whether such a claim is a basis for
consequential damages, including the subsequent looting on that
date, need not be decided at this time.  It is sufficient at this
time to hold that the claims against McGowan (and the others)

regarding the June 5, 2003 removal of locks and chains state a
basis for relief.  Count XXI will not be dismissed.

Plaintiff also seeks to amend his complaint to add a
claim that McGowan improperly took his truck in March 2004.  To
the extent this is a simple due process claim, no claim would be
stated because of the existence of a postdeprivation remedy.  See
Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003).
Plaintiff, however, alleges that this conduct was motivated by
invidious discrimination.  He also indicates that the City is
responsible for this conduct.  It cannot be determined that
permitting an amendment to add this claim would be futile because
plaintiff cannot possibly state a basis for relief.

### E.  City's Liability

In order for the City to be liable on any federal claim,
the City's conduct must have been pursuant to an official policy
or custom.  McCormick v. City of Chicago, 230 F.3d 319, 324 (7th
Cir. 2000); Wilson v. Giesen, 956 F.2d 738, 744 (7th Cir. 1992);
Alexander v. City of South Bend, 320 F. Supp. 2d 761, 780 (N.D.
Ind. 2004); Beard v. City of Chicago, 299 F. Supp. 2d 872, 873-74
(N.D. Ill. 2004).  There are allegations in the complaint that
are consistent with seeking respondeat superior liability, as
well as allegations that Mack and others are policymakers.
However, as previously discussed, plaintiff has alleged that

conduct was directed by Mayor Daley, whom the City concedes is a policymaker. Thus, plaintiff has adequately alleged a basis for the City's liability. Additionally, it is sufficient to conclusorily allege in the Amended Complaint that conduct was pursuant to a policy or custom of the City. Leatherman, 507 U.S. at 165-66; McCormick, 230 F.3d at 324-25; McNeal v. Cook County Sheriff's Department, 282 F. Supp. 2d 865, 868-69 (N.D. Ill. 2003). To the extent federal claims have been adequately alleged against the individual defendants, those claims will also continue as against the City. However, suing the individuals in their official capacity is duplicative of naming the City as a defendant. There is no need for the official capacity designation, which will be dismissed without prejudice. Searles v. Board of Education of City of Chicago/Chicago School Reform Board of Trustees, 2004 WL 1474583 *4 (N.D. Ill. June 29, 2004); Estate of O'Bryan v. Town of Sellersburg, 2004 WL 1234215 *17 (S.D. Ind. May 20, 2004); Berry v. Illinois Department of Human Services, 2003 WL 22462547 *1 n.3 (N.D. Ill. Oct. 29, 2003).

Additionally, to the extent plaintiff files an amended complaint, he would be permitted to add allegations that the City seized his truck without due process in November 2003.

# IV. STATE LAW CLAIMS

Plaintiff claims that, in 2001, Cuevas defamed him when Cuevas told Moore that plaintiff was a squatter. He also alleges that Cuevas committed defamation and fraud in 2000 based on false statements in the traffic tickets. On June 21, 2002, Mack allegedly committed defamation when posting an eviction notice falsely stating that the City had tax deeds for the State Street properties. In June 2003, McGowan allegedly committed defamation when he told a crowd that plaintiff was a squatter. These claims are apparently brought against the City as well.

A one-year statute of limitation applies to the state law claims against both the City and its employees. 745 ILCS 10/8-101. The state law claims based on Cuevas's statements in 2000 and 2001 are barred by the statute of limitations. Since Mack was not joined in this suit until November 2003, the defamation claim against him is also barred by the statute of limitations. The City, however, was made a party to this suit less than one year after Mack's allegedly defamatory statement. The City, however, cannot be held liable for purportedly defamatory statements of either Mack or McGowan. 745 ILCS 10/2-107.

The defamation claim against McGowan himself still needs to be considered. McGowan invokes the immunity of 745 ILCS 10/2-201, contending he is immunized from liability for any acts

involving the exercise of discretion.  The statute provides:
"Except as otherwise provided by Statute, a public employee
serving in a position involving the determination of policy or
the exercise of discretion is not liable for an injury resulting
from his act or omission in determining policy when acting in the
exercise of such discretion even though abused."  Simply
exercising discretion is not enough, the act must also involve
the determination of policy.  Harinek v. 161 North Clark Street
Ltd. Partnership, 181 Ill. 2d 335, 692 N.E.2d 1177, 1181 (1998);
Ellis v. City of Chicago, 272 F. Supp. 2d 729, 735 (N.D. Ill.
2003).  On the facts alleged, it was not a determination of
policy for McGowan to announce to a gathering crowd that
plaintiff was a squatter.  Section 2-201 does not immunize
McGowan from the defamation claim.

McGowan's other contention is that, as a public employee,
he is absolutely immune from defamation claims based on
statements made within the scope of his official duties.  This is
a common law immunity based on the need to ensure that government
officials are "free to exercise their duties unembarrassed by the
fear of damage suits in respect of acts done in the course of
those duties--suits which would consume time and energies which
would otherwise be devoted to governmental service."  Harris v.
News-Sun, 269 Ill. App. 3d 648, 646 N.E.2d 8, 11 (2d Dist. 1995)
(quoting Barr v. Matteo, 360 U.S. 564, 571 (1959)).  Not all

officials are entitled to the immunity. Whether the immunity
applies depends "on the nature of the government official's
duties, and not on his/her rank or title." <u>Harris</u>, 646 N.E.2d
at 11. The immunity only applies to statements "which are
legitimately related to matters committed to [the employee's]
responsibility." <u>Id.</u> (quoting <u>Blair v. Walker</u>, 64 Ill. 2d 1, 349
N.E.2d 385, 389 (1976)).

Here, it is alleged that McGowan is the 20th Ward
Superintendent. On the facts alleged, it is not established that
it is within a Superintendent's ordinary responsibilities to work
to evict a person from his property, to cut locks off the
resident's fence, or to speak about legal matters with any crowd
that may then gather. On the facts alleged, it cannot be
conclusively determined that the privilege applies.

The defamation claim against McGowan will not be
dismissed.

## V. SUMMARY OF RULING ON MOTIONS TO DISMISS

Based on the foregoing rulings, the following claims
remain from the Amended Complaint. Counts I, III (to the extent
it is based on Cuevas being motivated by plaintiff's race and
nationality in deciding to arrest plaintiff based on false
evidence), VIII-IX (to the extent individual claims remain
pending against Cuevas), XIV (to the extent claims remain pending

against the individual defendants other than Muhummad), XXI, and XXII. To the extent not otherwise clearly stated within these counts, Fourth Amendment, Equal Protection, and substantive due process claims remain pending against Cuevas, Mack, Daley, McGowan, Troutman, and the City relating to removing plaintiff's personal property on June 11, 2003 and the following days. An equal protection claim also remains pending against Muhummad. Plaintiff would also be permitted to file a Second Amended Complaint claiming the seizures of his truck in November 2003 and March 2004.

Subject to resolution of the in forma pauperis issue discussed in the following section, plaintiff will be permitted to file a Second Amended Complaint limited to those claims set forth as still pending. In light of plaintiff's past history of redundancy and tangential discussion, the Second Amended Complaint will be limited to being no more than 20 pages long. However, leave to file the Second Amended Complaint will not be granted until after an in forma pauperis issue is resolved.

## VI.  IN FORMA PAUPERIS STATUS

On June 30, 2003, this case was removed from state court. As the removing parties, defendants paid the federal court filing fee. On July 25, 2003, plaintiff filed a motion for appointment of counsel. To be entitled to appointment of counsel, plaintiff

had first to be granted leave to proceed _in forma pauperis_.  On

July 30, 2003, plaintiff filed an application to proceed _in forma

pauperis_ along with an accompanying financial affidavit.  See

Docket Entry [10].  The application to proceed _in forma pauperis_

was granted.  See Minute Order dated July 30, 2003 (Docket Entry

[12]).  The motion for appointment of counsel was denied.  Id.

In paragraph 2 of his July 30, 2003 financial affidavit,

plaintiff stated that, during the previous twelve months, he had

no income from a business, profession, or other self-employment,

nor any income from rent.  Plaintiff indicated that his only

income during that time period was $17.00[7] of wages and $700.00

from an unspecified other source.  In paragraphs 6 and 7,

plaintiff also stated that he owned no real estate and no

automobiles, boats, trailers, mobile homes or other items of

personal property with a then-current market value of more than

$1,000.

The _in forma pauperis_ statute provides in part:

"Notwithstanding any filing fee, or any portion thereof, that may

have been paid, the court shall dismiss the case at any time if

the court determines that (A) that allegation of poverty is

untrue."  28 U.S.C. § 1915(e)(2)(A).  Since the statute uses

"shall," dismissal is mandatory when the financial affidavit is

---

[7]The writing is unclear.  It may instead say $117.00 or
$7.00.

false.  Thomas v. General Motors Acceptance Corp., 288 F.3d 305, 306 (7th Cir. 2002).  It is within the district court's discretion as to whether to dismiss the case with or without prejudice.  Id. at 307-08; Mathis v. New York Life Insurance Co., 133 F.3d 546, 547-48 (7th Cir. 1998).  The possible grounds for dismissing with prejudice have not been fully delineated in the case law, but it has been held that, when the affidavit is intentionally false, it is within the court's discretion to dismiss the case with prejudice.  Id.; Chung v. Dushane, 2003 WL 22902561 *3 (N.D. Ill. Dec. 9, 2003), aff'd by unpublished order sub nom., Chung v. KPMG LLP, 2004 WL 1435198 (7th Cir. June 24, 2004).

The financial affidavit was filed on July 30, 2003.  In his Amended Complaint filed on November 5, 2003 (Docket Entry [27]), and subsequent pleadings, plaintiff alleges that he owns real estate located at 5941-59 South State Street in Chicago. While there are allegations that City employees have claimed he no longer owns the property, plaintiff repeatedly alleges that he continues to own those properties.  In the Amended Complaint, plaintiff alleges that, from 1996 through 2003, he was in the business of buying and loading goods and dealing with "West African Traders."  Plaintiff alleges that the State Street properties had trailers and other vehicles, some of which were loaded with goods, which had a combined value of $30,000,000.

Other allegations value the goods at as much as $100,000,000.
Plaintiff also alleges that he had contracts to sell some of
these vehicles and goods.  Plaintiff does allege that all of this
personal property was seized in June 2003.  Although he may not
have controlled the personal property as of July 30, 2003 nor
have had immediate access to it, he alleges that he continued to
own the property.  Plaintiff alleges that his personal property
was not destroyed until November 2003.  Thus, according to the
allegations, the personal property still existed in July 2003 and
plaintiff had an ownership interest in the personal property as
of July 30, 2003.

        The allegations contained in plaintiff's Amended
Complaint and answer to the motions to dismiss indicate that he
likely had significant sales income up until June 2003, as well
as sources of capital.  The allegations indicate that plaintiff
has owned the real property on State Street since prior to 2003
and continues to own it.  The allegations further indicate that
plaintiff owned substantial personal property as of July 30,
2003, but that he did not have access to it.  These three
allegations are inconsistent with statements in plaintiff's July
2003 financial affidavit that he had less than $1,000.00 in
income during the preceding year and owned no real or personal
property.  Indications are that either the financial affidavit is

false or allegations of the Amended Complaint are false and in bad faith.

A rule to show cause will be issued requiring plaintiff to show cause why his cause of action should not be dismissed based on false statements in his financial affidavit. Plaintiff should also address the question of whether any dismissal should be with or without prejudice. Defendants will also be provided an opportunity to express their views on this matter. No brief shall exceed 15 pages. Until it is determined whether the Amended Complaint should be dismissed based on a false financial affidavit, the filing of a Second Amended Complaint will be held in abeyance.

IT IS THEREFORE ORDERED that defendants' motions to dismiss [32-1, 33-1, 40-1, 42-1, 51-1] are granted in part and denied in part. Plaintiff's motions to amend [34-1, 58-2, 63-1, 66-1] are granted in part and denied in part. Plaintiff's motion to strike and dismiss [35-1,2] is denied. Plaintiff's motions to refile [58-1, 63-1] are denied without prejudice as moot. Counts II, III (in part), IV-VII, VIII-IX (in part), XII, XIII, XIV (In part), XV-XVII, XVIII-XX (without prejudice), XXIII, and XXIV of the Amended Complaint are dismissed. The official capacity claims are dismissed without prejudice. A rule to show cause shall issue. By August 30, 2004, plaintiff shall file a brief, not in excess of 15 pages, showing cause why this case

should not be dismissed in accordance with 28 U.S.C.

§ 1915(e)(2)(A).  By September 14, 2004, defendants may file

responses to plaintiff's show cause brief.  Ruling on the

§ 1915(e)(2)(A) issue will be by mail.

ENTER:

William T. Cort

UNITED STATES DISTRICT JUDGE

DATED:  AUGUST 11 , 2004